SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
MICHAEL M. LAUTER, Cal. Bar No. 246048
JACQUELINE G. LUTHER, Cal. Bar No. 271844
SHADI FARZAN, Cal. Bar No. 301610
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415.434.9100
Facsimile:  415.434.3947
Email:       okatz@sheppardmullin.com
              mlauter@sheppardmullin.com
              jluther@sheppardmullin.com
              sfarzan@sheppardmullin.com

Proposed Attorneys for Debtor,
Imperial Toy LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>Imperial Toy LLC, a California limited liability company,<br><br>        Debtor. | Case No.  19-52335<br>Chapter 11<br><br>**MOTION FOR ORDERS:**<br><br>**(I) AUTHORIZING THE DEBTOR TO (A) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) AND 364(e) AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES;**<br><br>**(II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES;**<br><br>**(III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c);**<br><br>**AND (IV) GRANTING RELATED RELIEF**<br><br>Date:    Tuesday, November 19, 2019<br>Time:    10:00 a.m.<br>Crtrm.:  11<br>Judge: Honorable M. Elaine Hammond |

# TABLE OF CONTENTS

Page

## MOTION

I. VENUE……………………………………………………………………1

II. INTRODUCTORY STATEMENT ……...…………………………………2

III. CERTIFICATION………………………………….……………………5

## MEMORANDUM OF POINTS AND AUTHORITIES

I. BACKGROUND ...........................................................................................6

II. THE PREPETITION LOAN AGREEMENTS ...........................................6

III. PROPOSED DIP FINANCING ................................................................8

    A.     The DIP Loan and Use of Cash Collateral Are Critical to Allow the Debtor's Proposed Sale Process to Occur.........................................8

    B.     The Debtor's Selection of Ja-Ru as Lender. ...........................................9

IV. REQUIRED DISCLOSURES FOR CASH COLLATERAL AND FINANCING MOTIONS................................................................................9

V. MEMORANDUM OF POINTS AND AUTHORITIES.............................14

    A.     The DIP Loan Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1)....................................................................14

    B.     The Court Should Grant the Debtor Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis. .............18

    C.     The Automatic Stay Should be Modified on a Limited Basis.............20

VI.     NOTICE .................................................................................................21

VII.     CONCLUSION ......................................................................................21

SMRH:4821-2417-3997.6                                              DIP Financing Motion

Imperial Toy LLC (the "Debtor") moves (the "Motion") this Court for entry of an order substantially in the form attached to this Motion as **Exhibit A** (the "DIP Order") and, following a final hearing, a final order, among other things:

(a)     authorizing the Debtor to obtain post-petition loans, credit, and other financial accommodations (the "DIP Loan") from Ja-Ru, Inc., a Florida corporation ("Ja-Ru" or "Lender") substantially in accordance with the terms of the Secured Note Purchase Agreement ("DIP Loan Agreement") attached to this Motion as **Exhibit B** and as supplemented or modified by the DIP Order, secured by security interests and liens on substantially all of the assets of the Debtor, pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), priming all other liens on the Collateral except the liens in favor of CIT, in respect of the Debtor's pre-petition accounts and accounts receivable, the "Permitted Prior Liens" identified in the Pre-Petition ABL Credit Agreement (defined below) with Great Rock Capital Partners Management, LLC, as agent ("Great Rock"), and the Carve-Out;

(b)     authorizing the Debtor to grant Lender superpriority administrative claim status pursuant to Bankruptcy Code section 364(c)(1) in respect of all DIP Obligations (as defined below);

(c)     authorizing the Debtor to use the collateral, including cash collateral, that secures the Debtor's obligations to Ja-Ru, and granting adequate protection as set forth in this Motion; and

(d)     modifying the automatic stay to the extent set forth in this Motion.

In support of the Motion, the Debtor respectfully represents the following:

# I.     VENUE

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

SMRH:4821-2417-3997.6                                                                 DIP Financing Motion

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory basis for the relief requested herein is Bankruptcy Code sections 105, 361, 362, 363, 364, 503(b), and 507 and Bankruptcy Rules 2002, 4001 and 9014.

## II.     **INTRODUCTORY STATEMENT**

As more fully set forth herein, the Debtor has an urgent and immediate need for access to cash collateral from the Pre-Petition Secured Creditors and borrowings from Ja-Ru in the principal amount of up to $5,750,000 following entry of the DIP Order.

The Debtor's case was filed in order to facilitate a going concern sale pursuant to marketing process described in the associated sale and bid procedure motions in order to realize the highest and best value for its assets for the benefit of the estate. In order to run that process, the Debtor needs to continue operating for approximately 45 days while the process of marketing the assets, obtaining court approval for a sale, and closing the sale takes place. The Debtor's ability to operate during this period requires financing in the form of the DIP Loan and immediate access to and use of its Cash Collateral, the absence of which would immediately and irreparably harm the Debtor, its estate and its creditors. Without such funds, the Debtor would be forced to liquidate its assets for far less than the Debtor expects to receive through a sale of such assets under the process the Debtor intends to run, to the detriment of all creditors.

Given the Debtor's current financial condition and financing arrangements, the Debtor was unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. The Debtor was also unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate

that is already subject to a lien.  As a result, financing on a post-petition basis was not otherwise available without granting Ja-Ru the protections, rights and remedies afforded by the DIP Loan Agreement and the DIP Order.

Notably, the terms of the DIP Loan here involve a priming lien in favor of Ja-Ru on all the Debtor's assets except for the pre-petition accounts receivable sold and pledged to CIT.  As described in more detail below, all of the Debtor's property is subject to pre-petition liens of the following Pre-Petition Secured Creditors: accounts receivable (CIT – first position – owed roughly $7.7 million plus a contingent amount arising under a $300,000 issued and undrawn letter of credit), all personal property (Great Rock – first position on all but accounts receivable, on which they are second position – owed roughly $13 million), and the Hirsch Trust (junior to CIT and Great Rock – owed roughly $9,144,133).  These Pre-Petition Secured Creditors have consented to this priming lien and are consenting to the use of their Cash Collateral as part of the DIP Loan, as provided in the DIP Order.

The Debtor has determined that the DIP Loan offered by Ja-Ru provides favorable terms to the Debtor and its estate.  In the sound exercise of its business judgment and fiduciary duty, the Debtor has determined to proceed under the DIP Loan offered by Ja-Ru, subject to the approval of the Court.

The relevant provisions of the DIP Loan Agreement and the DIP Order are as follows:[1]

---

[1] Any summary of the terms of the DIP Loan Agreement and the DIP Order contained in this Motion is qualified in its entirety by reference to the provisions of the actual DIP Loan Agreement and DIP Order, as applicable.  To the extent the Motion and the DIP Order or the DIP Loan Agreement are inconsistent, the DIP Order or DIP Loan Agreement, as applicable, shall control.

| Term | Description | Location in Documents |
|---|---|---|
| Borrowing Limits/New Money | $5,750,000 | Secured Note Purchase Agreement, Recitals, definition of "Maximum Amount" |
| Interest Rate | 8% per annum | Secured Promissory Note, page 1 |
| Maturity Date | January 3, 2020 | Secured Promissory Note, section 2; Secured Note Purchase Agreement, § 1.3 |
| Use of Proceeds of Postpetition Loan and Cash Collateral | Company's operating needs – See Budget | Section 5.1 and Exhibit 1 of the Proposed Order |
| Security, Priority, and Adequate Protection | Secured by all debtor's assets. Priming except as to CIT's liens on the pre-petition accounts receivable. Super-priority administrative claim. Replacement liens as adequate protection to Pre-Petition Secured Creditors | Section 3.1 of the Secured Note Purchase Agreement; Section 11(a) of the Proposed Order |
| Carve-Out | (i) U.S. Trustee fees; (ii) incurred fees and expenses of Debtor's and Committee's estate professionals up to the amounts permitted in the Budget; (iii) chapter 7 trustee fees up to $15,000; (iv) further fees and expenses of Debtor's and Committee's estate professionals up to $200,000. | Section 3.1 of the Secured Note Purchase Agreement; Section 15 of the Proposed Order |
| Events of Default | (a) Termination of APA with Ja-Ru; (b) breach of covenant (including covenant in Section 5.3 re milestones in the case); (c) breach of rep and warranty; (d) conversion to chapter 7; (e) appointment of trustee or examiner with expanded powers; (f) grant of relief from stay to pre-petition lenders or other creditors; (g) dissolution of debtor or cessation of substantially all of its business; (h) any request for an order priming the DIP Lender; (i) termination of exclusivity; (j) invalidity of DIP liens; (k) Dismissal of bankruptcy case; | Section 7.1 of Secured Note Purchase Agreement |

Case: 19-52335    Doc# 2    Filed: 11/18/19    Entered: 11/18/19 11:59:32    Page 6 of 23

| Term | Description | Location in Documents |
|------|-------------|----------------------|
| | (l) stay, reversal, modification of DIP Financing Order; (m) a new event of default occurs under the Note, Guaranty, Pre-Petition Loan Documents. | |
| Borrowing Conditions | No event of default, Court has entered interim DIP order by November 20th, debtor has tendered all seller deliverables. | Section 2.3 of the Secured Note Purchase Agreement |

## III.    <u>CERTIFICATION</u>

The undersigned counsel for the Debtor has read the Motion; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the motion are in conformity with the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations,* except as set forth above. I understand and have advised the Debtor that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the court determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated:  November 18, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    _____
                    */s/ Ori Katz*
                    ORI KATZ

Proposed Attorneys for Debtor
Imperial Toy LLC

SMRH:4821-2417-3997.6

DIP Financing Motion

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  BACKGROUND

On November 18, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No official committee of unsecured creditors has yet to be appointed in the case.

The purpose of the bankruptcy filing is to facilitate a going concern sale process that will yield the highest and best return on the Debtor's assets for the benefit of its estate. The DIP Financing and Cash Collateral use sought in this Motion provides the necessary runway for the Debtor to operate as a going concern while that process takes place.

## II.  THE PREPETITION LOAN AGREEMENTS

As described in the Tiger Declaration, the Debtor's capital structure consists of a factoring agreement with CIT (defined below), a secured loan facility with Great Rock (defined below), and secured notes held by The Hirsch Family Trust Dated June 9, 1998 (the "Hirsch Trust"). CIT, Great Rock, and the Hirsch Trust are collectively referred to herein as the "Pre-Petition Secured Creditors."

The factoring arrangement with CIT is documented in that certain Factoring Agreement dated December 13, 2016 (as amended, modified, restated, and/or supplemented, the "Factoring Agreement"), and the other agreements entered into further thereto or in connection therewith, including without limitation an Inventory Security Agreement dated December 13, 2016, an Equipment Security Agreement dated December 13, 2016, a Standby Letter of Credit Agreement dated December 13, 2016, and a Grant of Security Interest in Trademarks, Patents, Copyrights, and Licenses dated December 13, 2016 (each, as amended, modified, restated, and/or supplemented, together with the Factoring Agreement, the "Factoring Documents"),

Case: 19-52335   Doc# 2   Filed: 11/18/19   Entered: 11/18/19 11:59:32   Page 8 of 23

among other things, (a) the Debtor sold and assigned to The CIT Group/Commercial Services, Inc. ("CIT"), and CIT purchased, all of the Debtor's pre-petition accounts (the "Pre-Petition Accounts"), and (b) CIT made loans, advances, and/or other financial accommodations to the Debtor. The current outstanding balance of the debt to CIT under the Factoring Documents is approximately $7.7 million plus a contingent amount arising under a $300,000 issued and undrawn letter of credit. Aside from the purchase of the Pre-Petition Accounts, the Debtor's obligations to CIT under the Factoring Documents are secured by a lien on all accounts, inventory, equipment, investment property and intellectual property.

The secured loan facility with Great Rock is documented in that certain Loan Agreement dated July 5, 2018 (as amended to date, the "Great Rock Loan Agreement") by and among Great Rock Capital Partners Management, LLC, as administrative agent for the lenders party thereto ("Great Rock"), the lenders from time to time party thereto, and the Debtor and Imperial Toy de Mexico, S. de R.L., de C.V., a Mexican Sociedad de Responsabilidad Limitada de Capital Variable, as borrowers. The current outstanding balance of the obligations under the Great Rock Loan Agreement are approximately $13,000,000. The borrowers' obligations are secured by a lien on substantially all of the Debtor's personal property. The priority of the liens of CIT and Great Rock are governed by that certain Intercreditor Agreement, dated as of July 5, 2018, pursuant to which CIT's liens are senior and prior to right to Great Rock's liens in respect of CIT Priority Collateral (as defined in that Intercreditor Agreement), which includes the Debtor's accounts, and Great Rock's liens are senior and prior in right to CIT's liens in respect of ABL Priority Collateral (as defined in that Intercreditor Agreement), which includes the Debtor's personal property.

The obligations to the Hirsch Trust originated in February 2018, when the Debtor entered into a series of redemption, loan, security and related agreements with the Hirsch Trust to repurchase and redeem from the Hirsch Trust equity of the

Debtor equal to 40% of the then outstanding equity of the Debtor. The Hirsch Trust received a number of promissory notes from the Debtor and Path Global Ltd., a Hong Kong entity. The Hirsch Trust began to receive cash payments from the Debtor and Path Global relating to the redemption in July 2019 and such payments from the Debtor and IEI continued through the remainder of 2018 until early 2019. Prior to such redemption, Peter Tiger and Art Hirsch each owned 50% of the Debtor and all of such equity had voting rights. The loan obligations to the Hirsch Trust are secured (but subordinated as described below).

The obligations to the Hirsch Trust are also secured by a lien on substantially all assets of the Debtor. These liens are subordinated to the liens of CIT and Great Rock pursuant to intercreditor agreements entered into by the Hirsch Trust, CIT, and Great Rock. The current outstanding balance of the obligations to the Hirsch Trust is approximately $9,144,333.

Ja-Ru, the proposed DIP Lender, does not have any pre-petition loans to the Debtor. Its connection to the Debtor is that it is the stalking horse bidder under the stalking horse APA attached to the sale motion filed concurrently herewith. Ja-Ru wishes to act as the DIP Lender so as to finance the sale process and ensure that the Debtor continues its business operations during the sale process in which it may ultimately be the winning bidder.

## III. PROPOSED DIP FINANCING

### A. The DIP Loan and Use of Cash Collateral Are Critical to Allow the Debtor's Proposed Sale Process to Occur.

The Debtor requires immediate access to the Pre-Petition Secured Creditors' cash collateral and an infusion of cash from Ja-Ru in the form of the DIP Loan to sustain itself as a going concern and administer this chapter 11 case while it goes through a sale process that will yield the highest and best return on its assets for the benefit of the estate. Absent immediate funding through the DIP Loan and use of Cash Collateral, the Debtor would be forced to shut down its business and convert

this case to chapter 7, which would have an adverse effect on the Debtor's estate, its employees, vendors, and other constituents.

**B.      The Debtor's Selection of Ja-Ru as Lender.**

Given the Debtor's current financial condition and financing arrangements, and the short-term nature of the DIP Loan, the Debtor was unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code.  The Debtor was also unable to obtain secured credit from other sources: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is already subject to a lien. As a result, financing on a post-petition basis was not otherwise available without granting Ja-Ru the protections, rights and remedies afforded by the DIP Loan Agreement.

The Debtor has reasonably determined that the DIP Loan offered by Ja-Ru provides favorable terms to the Debtor and its estate.  In the sound exercise of its business judgment and fiduciary duty, the Debtor has determined to proceed under the DIP Loan offered by Ja-Ru, subject to the approval of the Court.

**IV.      REQUIRED DISCLOSURES FOR CASH COLLATERAL AND FINANCING MOTIONS**

Pursuant to the Court's *Guidelines for Cash Collateral and Financing Stipulations* ("Guidelines"), the Debtor makes the following required disclosures:

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| The granting of priority or a lien on property of the estate pursuant to Bankruptcy Code §§ 364(c) or (d) | DIP Lender is afforded super-priority claims and a priming lien on all assets of the Debtor except for the pre-petition accounts receivable pledged to CIT. | Pre-Petition Secured Parties have consented to the priming lien, as it is necessary to run a process that will pay their claims. | Section 3.1 of the Secured Note Purchase Agreement; paragraphs 10 and 11 of DIP Order |

9

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| | | | |
| The providing of adequate protection or priority with respect to a claim that arose before the commencement of the case, including the granting of a lien on property of the estate to secure the claim, or the use of property of the estate or credit obtained under Bankruptcy Code § 364 to make cash payments on account of the claim | Replacement liens and superpriority claims for diminution in value, adequate protection milestones tied to sale process | Pre-Petition Secured Parties' consent to cash collateral use and consent to priming of liens to make DIP Loan available | Paragraph 12 of DIP Order |
| A determination with respect to the validity, perfection, priority, or amount of a claim that arose before the commencement of the case, or of any lien securing such claim | Debtor stipulates to validity of pre-petition liens subject to challenge period for a committee if one is appointed | Pre-Petition Secured Parties' consent to cash collateral use and DIP Loan priming them | DIP Order finding D (stipulation) and Paragraph 16 (challenge provisions for committee) |
| A waiver or modification of the provisions of the Bankruptcy Code or applicable rules relating to the automatic stay | Automatic stay lifted to perfect DIP Liens and Adequate Protection Liens (para 22 of DIP Order); Automatic stay lifted to allow DIP Lender to exercise rights and remedies under DIP Loan Agreement (para 23 of DIP Order); Automatic stay, to the extent applicable, modified to allow CIT to collect and apply proceeds of pre-petition accounts. | Short nature of sale process in case, DIP Lender's funding of process, Pre-Petition Secured Creditors' agreement to priming and cash collateral use to facilitate that process | Paragraphs 22 and 23 of DIP Order |
| A waiver or modification of any entity's authority to file a plan, to seek an extension of time | Obtaining DIP financing from another source is an event of default under the DIP Loan | DIP Lender's agreement to lend, need for priority | Section 7.1(h) of Secured Note Purchase Agreement |

10

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| in which the debtor has the exclusive right to file a plan, or the right to request the use of cash collateral under Bankruptcy Code § 363(c), or to request authority to obtain credit under Bankruptcy Code § 364 | Agreement/Note Purchase Agreement | | |
| A waiver or modification of the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate, or on the foreclosure or other enforcement of the lien | Automatic perfection of DIP Liens and Adequate Protection Liens | DIP Lender's agreement to lend and Pre-Petition Secured Creditors' consent to cash collateral use and priming of DIP Liens | Paragraphs 11, 12, and 22 of DIP Order |
| A release, waiver, or limitation on any claim or other cause of action belonging to the estate or the trustee, including any modification of the statute of limitations or other deadline to commence an action | Waiver of rights and claims under sections 552 or 726 of the Bankruptcy Code seeking to avoid the imposition of the DIP Liens, Pre-Petition Liens or the Adequate Protection Liens. Also waiver of claims against Pre-Petition Secured Creditors subject to challenge provisions | DIP Lender's agreement to lend and Pre-Petition Secured Creditors' consent to cash collateral use and priming of DIP Liens | Finding P and Paragraph 16 of DIP Order |
| Indemnification of any entity | Indemnification of DIP Lender and directors, officers, and employees for liability arising in connection with the DIP loan documents | DIP Lender's agreement to lend | Paragraph 8 of DIP Order |
| A release, waiver, or limitation of any right under Bankruptcy Code § 506(c) | Waiver of 506(c) rights as to collateral for DIP Loan and pre-petition loans | DIP Lender's agreement to lend and Pre-Petition Secured Creditors' consent to cash collateral use and priming of DIP Liens | Paragraph 20 of DIP Order |
| The granting of a lien on any claim or | DIP Liens and Adequate Protection Liens include | DIP Lender's agreement to lend and Pre-Petition | Paragraphs 11 and 12 of DIP Order |

11

| Required Disclosure | Provision | Reason for Provision | Location in Documents |
|---|---|---|---|
| cause of action arising under Bankruptcy Code §§ 544, 545, 547, 548 549, 553(b), 723(a), or 724(a) | liens on avoidance actions and proceeds thereof | Secured Creditors' consent to cash collateral use and priming of DIP Liens | |
| Provisions for "carve-outs" for professionals' fees and expenses | Carve-out provided for estate professionals | Cost of paying for the administration of this case in light of the anticipated sale proceeds from the stalking horse bidder being insufficient to repay secured creditors in full | Paragraph 15 of the DIP Order and the Budget/Cash Flow Forecast attached to the DIP Order as Exhibit 1 |

Also pursuant to the Guidelines, the Debtor has listed below each of the provisions that are identified in the Guidelines as provisions that the Court will not ordinarily approve and has identified whether such provisions are applicable here:

| Provision | Description |
|---|---|
| Cross-collateralization clauses and "roll-ups" | N/A |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection, or amount of secured party's lien or debt | Debtor's stipulations to validity of pre-petition liens (finding D in DIP Order) and challenge provisions to said liens (paragraph 16 of DIP Order) |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation | In addition to stipulations in finding D noted above, there are also the priming provisions of paragraph 11 of the DIP Order which dictate the relative priorities of the DIP Lender's liens vis a vis the Pre-Petition Secured Creditors' liens |
| Waivers of 11 U.S.C. § 506(c), *unless* the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | Waiver of 506(c) rights as to collateral for DIP loan and pre-petition loans in paragraph 20 of DIP Order |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation | Milestones for sale process phrased as events of default in paragraph 24 of the DIP Order |

12

| Provision | Description |
|---|---|
| of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable law | |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract | Releases of causes of action against Pre-Petition Secured Creditors subject to challenge period – stipulation in finding D of DIP Order and challenge provisions in paragraph 16 of DIP Order |
| Waivers of, or liens on any of the estate's rights arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, 553, 723(a), or 724(a), or the proceeds of any such rights | DIP Liens and Adequate Protection Liens cover avoidance actions and proceeds thereof. (Para 11 and 12 of DIP Order) |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee | DIP Lender is granted automatic relief from stay as noted above to enforce rights under DIP Loan Agreement/Note Purchase Agreement, and events of default include conversion to chapter 7 and appointment of trustee. (Para 23 of DIP Order and Section 7.1 of Secured Note Purchase Agreement) |
| Waivers of procedural requirements, including those of foreclosure mandated under applicable nonbankruptcy law, and for perfection of replacement liens | Automatic perfection of DIP Liens and Adequate Protection Liens as provided in Paragraphs 11 and 12 of DIP Order |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | N/A |
| Findings of fact on matters extraneous to the approval process | The Debtor believes the proposed findings in the DIP Order are appropriately tailored to the relief requested. |
| Provisions providing unreasonable treatment with respect to fees or professionals retained by a creditors' committee compared to any carve-outs provided for professionals retained by the debtor in possession or trustee | The Carve-Out in Paragraph 15 of the DIP Order and in the Budget/Forecast attached as Exhibit 1 thereto include amounts for Committee counsel which the Debtor believes are reasonable in light of the facts and expected timeline of this case |

13

DIP Financing Motion

| Provision | Description |
|---|---|
| Provisions that provide an inadequate carve-out for a subsequently appointed trustee in the case, whether before or after conversion | The Carve-Out in Paragraph 15 of the DIP Order includes a $15,000 carve-out for a chapter 7 trustee, which the Debtor believes is reasonable in light of the facts and expected timeline of this case. |

## V.    MEMORANDUM OF POINTS AND AUTHORITIES

### A.    The DIP Loan Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1).

The Debtor needs cash to meet ongoing obligations necessary to run its business and administer its chapter 11 case while it goes through an orderly and expedient going concern sale process for the benefit of the estate and all creditors. Pursuant to section 364(c) and 364(d)(1) of the Bankruptcy Code, the Debtor requests authority to enter into the DIP Loan Agreement as an administrative expense, having priority over other administrative expenses and secured by a lien on the Debtor's assets that will be senior to the Pre-Petition Secured Creditors' liens under the Prepetition Loan Documents, except for the Carve-Out and the lien of CIT on pre-petition accounts receivable.

Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate. Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> (c)  If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
>    (1)  with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:

14

Case: 19-52335    Doc# 2    Filed: 11/18/19    Entered: 11/18/19 11:59:32    Page 16 of 23
SMRH:4821-2417-3997.6                                                           DIP Financing Motion

    (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

  Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans.  Pursuant to section 364(d)(1) of the Bankruptcy Code, the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

    (1) the trustee is unable to obtain such credit otherwise; and

    (2) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

  The Debtor's execution of the DIP Loan Agreement is an exercise of its sound business judgment that warrants approval by the Court.  The Debtor and its advisors have undertaken an analysis of the Debtor's projected financing needs during the pendency of this Chapter 11 Case and the Debtor's sale process.  Based on that analysis, the Debtor determined that it needs post-petition financing to continue operating during the sale and marketing period and to support its restructuring activities.  Accordingly, the Debtor began negotiating with Ja-Ru regarding the terms of post-petition financing.  After a series of good faith, arm's-length negotiations, the Debtor and Ja-Ru agreed to the DIP Loan Agreement.  Based on the advice of its professionals, the Debtor has determined in its sound business judgment that the terms of the DIP Loan provide a greater amount of financing on more favorable terms than any other reasonably available alternative.

  Specifically, the DIP Loan will provide the Debtor with access to borrowing availability to pay its limited operating expenses, including rent, utilities and certain

vendor payments, as well as restructuring related expenses. Without the DIP Loan, the Debtor does not have sufficient cash flow to pay for these items. Unless these expenses are paid, the Debtor will be forced to cease its limited operations, which would result in irreparable harm to the value of its assets, which it seeks to sell as a going concern under section 363 of the Bankruptcy Code. The DIP Loan therefore represents the best chance of survival for the Debtor to effectuate the sale, and should be authorized as being a proper exercise of the Debtor's business judgment.

The liens that the Debtor proposes to grant to Ja-Ru to secure repayment of the DIP Loan will prime the existing prepetition secured debt of the Pre-Petition Secured Creditors except for the liens of CIT on the Debtor's pre-petition accounts receivable. The Pre-Petition Secured Creditors have consented to the priming of their liens in this fashion, and have reviewed, commented on, and agreed to the provisions respecting priming in the proposed interim order. Despite efforts to locate alternative funding sources, the Debtor does not have access to financing on better terms than the proposed DIP Loan. Moreover, the Debtor cannot obtain the financing that it requires via unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. In addition, the DIP Loan is essential for the Debtor to obtain credit from vendors because the existence of this facility will afford vendors a level of comfort that the Debtor will be able to pay for the goods and services that it will receive on credit.

As indicated above, section 364(c) of the Bankruptcy Code enumerates certain incentives that a bankruptcy court may grant to post-petition lenders. Such incentives are not exhaustive. Bankruptcy courts frequently have authorized the use of inducements not specified in the statute. *See, e.g., Unsecured Creditors' Comm. V. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order that prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to post-petition lender), *aff'd*, 145 B.R.

312, 316 (B.A.P. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized post-petition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364"); *In re Antico Mfg. Co.*, 31 B.R. 103 (Bankr. E.D.N.Y. 1983) (authorizing lien on prepetition collateral to secure post-petition indebtedness).

The Debtor proposes to grant Ja-Ru certain enhancements in the form of senior liens against the Debtor's prepetition and post-petition assets, debt and security acknowledgements, releases, and waivers of rights under sections 506(c) and 552 of the Bankruptcy Code. The Debtor believes that such enhancements are reasonable in return for the funding available under the DIP Loan. The Debtor also proposes to grant the Pre-Petition Secured Creditors replacement liens and superpriority claims for adequate protection, to the extent of diminution in the value of their collateral, given their consent to the priming and to the use of their cash collateral.

The DIP Loan is the Debtor's best available financing options for a variety of reasons. First, the availability of the DIP Loan under the DIP Loan Agreement will provide the Debtor with the necessary liquidity and time to conduct and conclude the sale process for substantially all of its assets. Second, the terms of the DIP Loan Agreement are competitive and substantially less costly than alternative post-petition financing. Third, while the Debtor will stipulate to the validity of the Pre-Petition Secured Creditors' liens in exchange for their consent to the priming DIP Loan and cash collateral use, any committee subsequently appointed will have the ability to review and challenge said liens.

In light of the Debtor's inability to find post-petition financing and consent to cash collateral use on more favorable terms, the fact that the Pre-Petition Secured Creditors hold liens on all of the Debtor's assets, and the various benefits afforded to all parties in interest by the Debtor's entry into the DIP Loan Agreement, as described above, the Debtor submits that the validation of the Pre-Petition Secured

17

Creditors' claims is appropriate and should be approved, subject to the Challenge Period.

The Debtor respectfully submits that the DIP Loan satisfies section 364(c) and (d) of the Bankruptcy Code. The best credit terms available to the Debtor are those set forth in the DIP Loan Agreement. Thus, the Debtor believes that it is fair, reasonable, and necessary for the Court to approve the DIP Loan and enter the DIP Order. In addition to representing the best terms presently available to Debtor, the DIP Financing is also in the best interests of the Debtor's estate. The DIP Loan will provide the Debtor needed funding to maintain and operate its business and to run the Debtor's proposed sale process. The DIP Loan therefore is plainly in the best interests of Debtor's estate.

Based on the foregoing, Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Loan because Ja-Ru has offered to extend such financing in good faith. Further, section 364(e) provides a lender with a presumption of good faith. *Weinstein, Eisen, Weiss LLP v. Gill (In re Cooper Common, LLC),* 424 F.3d 963, 969 (9th Cir. 2005).

**B.** **The Court Should Grant the Debtor Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1) on a Final Basis.**

The Debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor in possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estates and an entity other than the estates have an interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell, or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

> (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Here, the Pre-Petition Secured Creditors consent to the use of cash collateral and such use is absolutely necessary in the Debtor's business judgment to continue limited operations and to maximize the value of these estates. In addition, the Pre-Petition Secured Creditors are being provided adequate protection for the use of their cash collateral.

The means by which adequate protection is provided are specified in section 361 of the Bankruptcy Code. Adequate protection may include, but is not limited to "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in such property" and "granting such other relief…, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

What constitutes adequate protection is determined on a case-by-case basis, and courts have broad flexibility under Bankruptcy Code section 361 in determining what constitutes adequate protection. *See, e.g., In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987); *In re Green*, 436 B.R. 91, 94 (Bankr. S.D. Ill. 2010) ("[W]hether a particular secured creditor is adequately protected is a determination

Case: 19-52335   Doc# 2   Filed: 11/18/19   Entered: 11/18/19 11:59:32   Page 21 of 23

to be made on a case-by-case basis and is within the discretion of the court."). Indeed, section 361 of the Bankruptcy Code merely specifies the means by which adequate protection may be provided. "It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept." H.R. Rep. No. 95-595, at 338, 95th Cong., 1st Sess. (1977).

As adequate protection for the use of Pre-Petition Secured Creditors' cash collateral comes in the form of replacement liens and superpriority claims granted to the Pre-Petition Secured Creditors. The Debtor submits that the foregoing adequately protects the Pre-Petition Secured Creditors in a manner consistent with the requirements of the Bankruptcy Code. Accordingly, the Debtor's use of Cash Collateral should be approved.

## C. The Automatic Stay Should be Modified on a Limited Basis.

The relief requested in this Motion contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to: (i) grant the liens described above with respect to Ja-Ru and the Pre-Petition Secured Creditors and to perform such acts as may be requested to assure such priority status and afford Ja-Ru rights upon default under the DIP Loan Agreement; (ii) execute such other documents as may be required to effectuate the financing and (iii) implement the terms of the proposed DIP Order.

Stay modifications of this kind are ordinary features of post-petition financing facilities and, in the Debtor's business judgment, are reasonable under the present circumstances.

Case: 19-52335  Doc# 2  Filed: 11/18/19  Entered: 11/18/19 11:59:32  Page 22 of 23

## VI. <u>NOTICE</u>

Notice of the Motion will provided to the following parties or, in lieu thereof, on their counsel, if known: (a) the Office of the United States Trustee, (b) the creditors appearing on the list filed in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure, (c) the Debtor's Pre-Petition Secured Creditors and Ja-Ru, (d) parties that file with the Court and serve upon the Debtor requests for notice of all matters in accordance with Bankruptcy Rule 2002, and (e) any known parties that assert a lien on the Debtor's assets. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## VII. <u>CONCLUSION</u>

Based upon the foregoing, the Debtor requests entry of the DIP Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001 and local Bankruptcy Rule 4001-2: authorizing the Debtor to (a) enter into and incur credit under the DIP Loan Agreement with Ja-Ru, (b) use cash collateral, and (c) provide adequate protection to the Pre-Petition Secured Creditors in accordance with the provisions of this Motion.

Dated: November 18, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _/s/ Ori Katz_

ORI KATZ

Proposed Attorneys for Debtor
Imperial Toy LLC

Case: 19-52335   Doc# 2   Filed: 11/18/19   Entered: 11/18/19 11:59:32   Page 23 of 23